**Battle** *vs.* **Coit** and others, survivors of Thompson and others.

The indorsee of a draft has no right to sue the drawer on the original consideration. As regards the consideration, there is no privity of contract between the indorsee and the drawer.

The transfer of a draft, given as collateral security for the payment of the purchase money of property sold, is not an equitable assignment of the payee's right of action against the drawer, for the unpaid purchase money, contingent upon the non-payment of the draft, and the surrender thereof by him.

APPEAL, by the plaintiff, from a judgment entered upon the report of a referee. The facts reported by the referee were, that on the 2d day of April, 1841, the plaintiff, and all of the defendants, including Thompson, Townsend and Putnam, since

Battle *v.* Coit.

deceased, were engaged as partners in the carrying business on the Erie canal, under the name of "The Troy and Erie Line;" that the defendant Wm. Griffith, and one James Fish, who was not a member of the firm, acted as agents of the firm in Rochester. The name of that firm was Griffith & Fish. The defendants, Griffith, P. Griffith, William Griffith, David Griffith and John M. Griffith, composed the firm of G. P. Griffith & Co. which did business at Troy, and acted as agents of the defendants' firm at that place; that the defendants, George Coit and John L. Kimberly, with Sheldon Thompson and Charles Townsend, deceased, composed the firms of "Townsend & Coit" and S. "Thompson & Co." and did business at Buffalo. On the said 2d day of April, the plaintiff sold to the other members of that firm all his interest in the property and business of the "Troy and Erie Line," and for the balance of the purchase money not paid to him at the time, they agreed to pay him $250 and interest, on the 5th day of January, 1842; $250 and interest, on the 5th day of April, 1842; $250 and interest, on the 4th day of July, 1842, and $274.94 and interest, on the 5th day of October, 1842. On that day the plaintiff received from the defendants, through their agents, Griffith & Fish, without any agreement to take the same in payment, four several drafts, drawn by the said Griffith & Fish, upon the said G. P. Griffith & Co., all bearing date on that day, for the above sums respectively, each payable with interest, at the Bank of Troy, at the times when the above sums became payable, respectively. All of these drafts were payable to the order of the plaintiff. G. P. Griffith & Co. were the managing owners of the line, and the plaintiff's interest in the partnership was purchased, and the drafts were drawn by Griffith & Fish, under the direction of G. P. Griffith. All drafts drawn by Griffith & Fish for the benefit of the line were drawn upon G. P. Griffith & Co., and it was usual for them to make such drafts. These drafts were not drawn by Griffith & Fish on account of any indebtedness from them or G. P. Griffith & Co. to the line, but were drawn and accepted in the usual course of their business, as agents of the line. On the 13th of January, 1842, the firm of G. P. Griffith & Co. sold out their interest

in the property and business of the firm to Coit, Kimberly, Ide, Thompson, Townsend and Putnam, who assumed the debts of the line, among which the above drafts were enumerated. Before the maturity of the first draft, the plaintiff, in payment of his prior indebtedness to the Canal Bank of Lockport, indorsed the drafts to the bank, which has ever since been the owner thereof, and they still remain unpaid. When the drafts payable in January and April, 1842, matured, the bank brought suit thereon against the defendants, and the defendants, Coit, Kimberly and Ide, had judgment in that suit, on the ground that they were not parties to the paper; which judgment remains in full force.

This action was brought by the Canal Bank of Lockport in the name of Battle, for its own benefit, to recover to its own use the unpaid portions of the purchase money represented by the said four drafts. The defendants, before the commencement of the action, had notice of the claim made by the bank, and that the drafts were its property. After the commencement of the action Battle released the defendants from the several claims set forth in the declaration, which release was pleaded by the defendants *puis darrein continuance.* The drafts were produced on the trial, by the bank, and offered to be surrendered.

The referee decided, among other things, that the transfer of the drafts to the Canal Bank of Lockport was not an equitable assignment to it of the nominal plaintiff's right of action against the defendants, for the unpaid purchase money contingent upon the non-payment of drafts and the surrender thereof by him, and that the release set forth in the plea *puis darrein continuance,* was a bar to this action, and directed judgment in favor of the defendants, Coit, Kimberly and Ide. Judgment was entered on the report, and the plaintiff appealed to the general term.

*C. Tucker,* for the appellant. I. The right to recover upon the original consideration passed with the drafts, as incident thereto. It is certain that the right to enforce the collection of the drafts cannot exist in one person, and at the same time another person have the right to enforce payment upon the origi-

Battle *v.* Coit.

nal consideration. Hence the one is incident to the other, and of necessity follows it. It cannot be said that the transfer of the drafts discharged the defendants from the original liability, for such transfer put them in no worse condition, and could not injure them. If the defendants are not discharged by the transfer, the right to enforce the obligation to pay exists; and it being impossible for it to exist and be enforced, independent of the drafts, the owner of the drafts becomes the owner of the incident. The owner of the drafts alone can discharge the defendants from all liability. The payment of the drafts necessarily pays the original consideration, and hence discharges it. The payment of the debt to one who did not own the drafts would amount to nothing; and, besides, to entitle any one to recover upon the original consideration, he must, at the same time, give up the drafts; hence no one but the owner of the drafts can recover upon the original consideration. (*See Jacob's Law Dic. " Incident" and authorities there cited ; Langdon* v. *Buel,* 9 *Wend.* 81; 2 *John. Ch. R.* 418; 1 *John. Ch. Cas.* 129; 5 *Cowen,* 202, 206; 1 *John. R.* 590, 591; *Broom's Legal Maxims,* 369, 374.)

II. Although the defendants were not liable upon the drafts as copartners, or members of the Troy and Erie Line, still the drafts were given for their benefit, and in equity the defendants were bound to pay; and hence the transfer of this paper as effectually carried with it all the rights of Battle against the defendants, as though the drafts had been made and accepted by the defendants. (5 *Denio,* 360. 12 *John.* 343. 1 *Hill,* 516. 4 *Barb.* 374.)

*H. K. Smith,* for the respondents. I. The defendants' names nowhere appeared on the bills of exchange. Hence they cannot be liable on the bills.

II. The discounting of these bills by the Canal Bank of Lockport, transferred to the bank no claim for the original consideration on which they were founded, and gave the bank no right of action against the defendants. (*Luff* v. *Pope,* 5 *Hill,* 413; *S. C. affirmed,* 7 *id.* 577. *Harris* v. *Clark,* 3 *Comst.* 93.

*Cowperthwaite* v. *Sheffield*, 3 *id.* 243. *Rogers* v. *Coit*, 6 *Hill*, 322. *See opinion of Marvin, J. in Rich* v. *Kimberly, recently argued in this court. Marine and Fire Ins. Bank of Georgia* v. *Jauncey and others*, 3 *Sandf. S. C. R.* 257. *Chapman* v. *White*, 2 *Seld.* 412.)

III. If these drafts had been on a particular fund, the plaintiff could have maintained no action against the defendants, except on *an express promise* by them to pay. (*Chitty on Bills,* 8th *Am. ed.* 263. *Surtees* v. *Hubbard,* 4 *Esp. R.* 203. *Williams* v. *Everett,* 14 *East,* 582. *Scarborough* v. *Griggs,* 1 *Bay's R.* 368. *Minham* v. *Withers,* 1 *Bibb,* 503. *Beecker* v. *Beecker,* 7 *John.* 100. *Holly* v. *Rathbone,* 8 *id.* 148. *Dey* v. *Murray,* 9 *id.* 171. *Pelletreau* v. *Rathbone,* 18 *id.* 428. *Cunningham* v. *Duncan, A. N. P.* 45. *Douglass* v. *Wilkeson,* 6 *Wend.* 637. *Seaman* v. *Whitney,* 24 *id.* 260. *Quin* v. *Hanford,* 1 *Hill,* 82. *McCoon* v. *Biggs,* 2 *id.* 122. *Muir* v. *Schenck,* 3 *id.* 228. *Miner* v. *Hoyt,* 4 *id.* 193. *Luff* v. *Pope, above cited.*)

IV. If it is established that an order, draft or bill drawn for the whole of a particular fund is an equitable assignment of such fund to the payee, it is well settled that it is not an equitable assignment, when drawn for only a *part* of a fund; unless it be expressly assented to by the drawee. (*Mandeville* v. *Welch,* 5 *Wheat.* 285. *Gibson* v. *Clark,* 20 *Pick.* 15. *Robbins* v. *Bacon,* 3 *Greenl.* 346.)

V. The proof shows that Battle took the bills in actual payment. This would extinguish his claim to go back to the original consideration, they being the bills of third parties. Griffith and Fish were not members of the Troy and Erie Line.

*By the Court,* GREENE, J. The drafts received by Battle on the sale of his interest in the Troy and Erie Line were simple bills of exchange, by which the drawers and acceptors assumed the ordinary liabilities of such parties to that species of paper. The Canal Bank of Lockport, as the indorser of those bills from Battle, acquired his right to enforce against the drawers and acceptors the contracts which they had made

Battle *v.* Coit.

by drawing and accepting the bills, and nothing more. It is not claimed that he expressly assumed to transfer to the bank any other right. But it is claimed on the part of the bank, the real plaintiff in this action, that the right of Battle to sue for the consideration for which the bills were drawn, passed to the bank, by the indorsement of the bills, as a necessary incident thereto. The cases cited for the plaintiff establish the familiar principle that where a creditor holds a collateral security for a debt—as in the ordinary case of a bond secured by a mortgage—a simple assignment of the debt, or principal security, by the creditor, passes all his interest in the collateral security to the assignee. It is also well settled that a creditor has a right to the benefit of all securities placed by the debtor in the hands of his sureties for the purpose of paying the creditor's claim. But the present case does not come within either of these principles. The plaintiff, however, contends that the converse of the first proposition is true; in other words, that the transfer of a collateral security operates as a transfer of the original indebtedness. I think this position cannot be sustained upon principle or authority. It is true "that the right to *enforce the collection* of these drafts cannot exist in one person, *and at the same time* another person have the right to *enforce payment* upon the original consideration," for the reason that the law permits the recovery of but one satisfaction for the same debt. But the consequence contended for by the plaintiff by no means follows. Where a vendor receives the note of the vendee, for property sold, he may, after the maturity of the note, bring his action either upon the note or the original consideration, and recover upon the latter, on surrendering the note. But if the note has been negotiated, and is in the hands of a third party, the vendor cannot, while he is thus disabled from surrendering the note, recover upon the original consideration. In such a case payment to the holder discharges the debtor from all liability both upon the note and the original contract. His debt is paid, and the claim of the vendor is satisfied. But by what title does the holder claim; by what obligation is the maker bound to *him* for this payment? Simply by his express agree-

ment to pay the sum specified in the note to which the holder has acquired a title by the transfer from the payee. This however gives the holder of the paper no right to sue on the original consideration. As regards the consideration, there is no privity of contract between the holder and the maker.

There is no necessity for a resort to this action to secure any right which the plaintiff has acquired by virtue of the contract under which he claims. It is enough that the law enforces the agreement which the parties have made, by a direct action upon that agreement. What the plaintiff asks in this case is, not a new *remedy* upon, but a new *right* under this contract. This we have not the power to grant. The difficulty in the case probably is, that the parties to this paper do not happen to be the responsible parties to the original agreement with the payee. But they are the parties whose obligations he chose to take, and the plaintiff was willing to take the paper of him, and in this as in all other cases, each party must abide by his contract, and be content with the remedies which the law gives upon it.

I think the judgment should be affirmed.

Judgment affirmed.

[ERIE GENERAL TERM, November 13, 1854. *Marvin, Bowen* and *Greene*, Justices.]